**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

MARÍA DE LOURDES RAMOS,

Plaintiff,

v.

EL LAUNDROMAT DE CAGUAS ET AL,

Defendants.

CIVIL NO.: 25-1602 (MEL)

**OPINION AND ORDER**

## I. Procedural History

Pending before the court is Plaintiff María de Lourdes Ramos's ("Plaintiff") "Motion for Sanctions due to Defendant's Spoliation of Evidence." ECF No. 26. Plaintiff commenced this diversity lawsuit under the laws of Puerto Rico against Defendant El Laundromat de Caguas ("El Laundromat"), alleging that she was injured when she slipped and fell on an access ramp that sloped directly into the street after exiting El Laundromat on February 13, 2025. ECF No. 1 at 3–6. Plaintiff now alleges that El Laundromat failed to preserve surveillance video footage of the incident and the ramp on which Plaintiff allegedly slipped before the expert she retained was able to examine them. ECF No. 26 at 1, 6. Consequently, Plaintiff requests that the court make a finding of spoliation with respect to the video footage and the ramp and give an instruction to the jury that it may infer that examinations of the video footage and the ramp would have been unfavorable to El Laundromat's position. ECF No. 26 at 7. El Laundromat responds that an adverse inference instruction is unwarranted because (1) it had no duty to preserve the video recording; (2) Plaintiff failed to show "any willful or bad faith conduct" on the part of El Laundromat; (3) Plaintiff was not prejudiced by the loss of the video footage or replacement of

the ramp; and (4) in any case, evidence of the "alteration" of the ramp should be excluded under Rule 407 of the Federal Rules of Evidence as a subsequent remedial measure. ECF No. 33 at 2–17.

## II. Legal Standard

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Vélez v. Marriot PR Management, Inc.*, 590 F. Supp. 2d 235, 258 (D.P.R. 2008) (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)). The failure to preserve electronically stored information ("ESI") is governed by Rule 37(e) of the Federal Rules of Civil Procedure, which provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> > (A) presume that the lost information was unfavorable to the party;
> > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> > (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). To determine when ESI "should have been preserved in the anticipation or conduct of litigation," courts look to the common law duty to preserve relevant evidence. Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. The duty to preserve relevant evidence "predates the filing of the complaint and arises once litigation is reasonably anticipated." *Vélez*, 590 F. Supp. 2d, at 258. "Relevant evidence is that which may prove or disprove a party's liability theory." *Id.* (citations omitted).

The spoliation of physical evidence is governed entirely by the common law rather than a Federal Rule of Civil Procedure. To raise an inference of spoliation of physical evidence, the party alleging that spoliation has occurred must show "(1) an act of destruction; (2) discoverability of the evidence; (3) intent to destroy the evidence; and (4) occurrence of the act after commencement of litigation or, if before, at a time when the party was on notice that the evidence might be relevant to potential litigation." *Villalobos Santana v. Puerto Rico Police Bureau*, 2023 WL 6626991, at *1 (D.P.R. July 12, 2023) (quoting *Hefter Impact Techs., LLC v. Sport Maska, Inc.*, 2017 WL 3317413, at *8 (D. Mass. Aug. 3, 2017)).

Sanctions for spoliation of physical evidence are available under the inherent power of the court. *Wai Feng Trading Co. Ltd v. Quick Fitting Inc.*, 2019 WL 118412, at *4 (D.R.I. Jan. 7, 2019) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–45 (1991) (describing the inherent powers of the federal courts)). An appropriate sanction for spoliation includes the imposition of "a permissive negative inference," whereby "a trier of fact may (but need not) infer from a party's obliteration of [physical evidence] relevant to a litigated issue that the [physical evidence was] unfavorable to that party." *Testa v. Wal-Mart Stores, Inc.*, 144 F.3d 173, 177 (1st Cir. 1998). Before such an adverse inference "can materialize" the party moving for the adverse inference must "proffer evidence sufficient to permit the trier to find that the target knew of (a) the claim (that is, the litigation or the potential for litigation), and (b) the [evidence's] potential relevance to that claim." *Id.* (citing *Blinzler v. Mariott Int'l, Inc.*, 81 F.3d 1148, 1159 (1st Cir. 1996)).

Regarding intent, "negligent destruction is generally insufficient to justify a spoliation instruction; some indication of bad faith is required." *United States v. Montoya*, 844 F.3d 63, 68–69 (1st Cir. 2016) (citing *United States v. Laurent*, 607 F.3d 895, 902–03 (1st Cir. 2010) (noting

that an adverse inference instruction "usually makes sense only where the evidence permits a finding of bad faith destruction; ordinarily, *negligent* destruction would not support the logical inference that the evidence was [un]favorable to the defendant." (emphasis in original) (citation omitted))). "[O]f particular importance when considering the appropriateness of sanctions is the prejudice to the non-offending party and the degree of fault of the offending party." *Collazo-Santiago v. Toyota Motor Corp.*, 149 F.3d 23, 29 (1st Cir. 1998) (citing *Sacramona v. Bridgestone/Firestone, Inc.*, 106 F.3d 444, 446 (1st Cir. 1997)).

## III. Analysis

### A. Surveillance Footage

First, Plaintiff contends that video surveillance footage documenting Plaintiff's fall was not preserved by El Laundromat, even though it was aware that the surveillance system records over itself every two weeks. ECF No. 26 at 5; ECF No. 26-1 at 4. The video footage was apparently stored electronically (ECF No. 26 at 1; ECF No. 26-1 at 4), so Rule 37(e) of the Federal Rules of Civil Procedure applies.

For any sanctions to be warranted for the loss of the video footage, Plaintiff must first show that El Laundromat should have preserved it in anticipation or the conduct of litigation. Fed. R. Civ. P. 37(e). The accident allegedly took place on February 13, 2025, which is months before the complaint was filed on November 11, 2025. ECF No. 1 at 3. Accordingly, Plaintiff must show that El Laundromat should have reasonably anticipated litigation at the time the footage was lost. She attempts to do so by arguing that El Laundromat should have been aware of the potential for litigation because it was already engaged in another slip-and-fall lawsuit involving the ramp at the time her own accident occurred. ECF No. 26 at 4–5.

Plaintiff's line of reasoning is not convincing because whether a defendant should reasonably anticipate litigation is a "fact intensive analysis" and Plaintiff has only used one fact—that El Laundromat had been sued for a similar cause of action in the past. *Jelú Iravedra v. Municipality of Guaynabo*, 2019 WL 5088563, at *2 (D.P.R. Oct. 10, 2019) (citations omitted). Absent additional factors like the nature of the parties involved, the parties' conduct after the incident in question, and other circumstances, the occurrence of a previous accident that led to a lawsuit standing alone is not enough to cause El Laundromat to reasonably anticipate litigation. *See id.* (citing *Broccoli v. EchoStar Commc'ns Corp.*, 229 F.R.D. 506, 510 (D. Md. 2005) (employer placed on notice of potential litigation after plaintiff complained of sexual harassment and retaliation to supervisors); *Webster v. Psychiatric Med. Care, LLC*, 386 F. Supp. 3d 1358, 1363 (D. Mont. 2019) ("[A] sophisticated entity like [defendant, a psychiatric care contractor,] should always recognize the possibility of a lawsuit when it terminates the employment of a professional.")). Such additional factors do not appear in the record. Plaintiff says that she was brought to the hospital by her family, not by an ambulance or other method that would have alerted El Laundromat to the severity of Plaintiff's injuries. ECF No. 1 at 4. Moreover, until August 2025, neither Plaintiff nor her family appear to have made any statements or warnings to El Laundromat or its employees that indicated litigation might be forthcoming. Under the circumstances, El Laundromat was not placed in a position to have reasonably anticipated litigation two weeks after the incident in question when the video footage was automatically erased. Thus, El Laundromat had no duty to preserve the video footage and could not have committed spoliation of evidence.

**B. Access Ramp**

Next, Plaintiff argues that an adverse inference instruction should be issued because "the ramp was intentionally destroyed and the entrance to El Laundromat was significantly modified." ECF No. 26 at 6. The parties agree on the following facts: On August 20, 2025, El Laundromat received a letter from Plaintiff's counsel (the "letter"), in which Plaintiff requested El Laundromat's insurance information and explicitly mentioned the possibility of legal proceedings. ECF No. 26-2; ECF No. 26 at 5; ECF No. 33 at 2–3. On November 29–30, 2025, that is, after Plaintiff had filed her complaint and four days after service of process was carried out (ECF No. 6 at 2), the access ramp to El Laundromat was removed and replaced with a staircase and new, longer ramp that runs along the front of the building. ECF No. 26 at 6; ECF No. 26-1 at 3; ECF No. 33 at 13; ECF No. 46-3 at 7, 10–11.

"In order to determine whether spoliation occurred, [a] court must determine first, who is responsible for the loss of [the evidence] and second, whether the circumstances of the loss sustain the imposition of sanctions." *Jiménez-Sánchez v. Caribbean Restaurants*, 483 F. Supp. 2d 140, 144 (D.P.R. 2007). In this case, there is no dispute as to the fact that El Laundromat removed the ramp intentionally. The parties similarly agree that El Laundromat removed the ramp months after it received Plaintiff's letter. Receipt of the letter, which was printed on Plaintiff's counsel's letterhead and alluded to the potential initiation of legal proceedings, must have put El Laundromat on notice that litigation was possible, if not imminent. ECF No. 26-2 at 1.

Further, the ramp was obviously relevant to any of Plaintiff's possible claims, as the letter stated that she "slipped and fell due to dangerous conditions of the ramp at the front door . . . ." *Id.* Accordingly, an analysis of the ramp's conditions may have "prove[d] or disprove[d]

[Plaintiff's] liability theory." *Vélez*, 590 F. Supp. 2d, at 258 (citations omitted). Yet despite these circumstances, El Laundromat intentionally removed the access ramp while litigation was ongoing and while there was a clear duty to preserve relevant evidence.

The circumstances of the ramp's removal also shed light on El Laundromat's intent. The loss of the ramp is not something that ordinarily occurs due to negligence. Unlike a party misplacing, throwing away, or otherwise losing a document, disposing of an entrance ramp takes focused effort. This is not a case where the ramp was scheduled to be removed by a contractor, and he or she was never told that the job was canceled. In fact, the owner of El Laundromat personally "remodeled" the ramp. ECF 26-1 at 3; ECF No. 33 at 13–14. When combined with the timing of the removal, a few months after the letter was received and within days after service of process was performed, there is more than "some indication" of bad faith on the part of El Laundromat. *Montoya*, 844 F.3d at 68.

Having found that El Laundromat is at fault for the intentional loss of the access ramp, that it should have been aware of the possibility of litigation, and the ramp's relevance to that litigation, the court must now determine whether Plaintiff has suffered any prejudice. *Collazo-Santiago*, 149 F.3d at 29. "Prejudice will be measured by the degree in which a party's ability to adequately develop its liability theory or mount a proper defense has been hampered." *Vélez*, 590 F. Supp. 2d, at 258 (citations omitted).

El Laundromat insists that Plaintiff has suffered no prejudice from the loss of the ramp. It points out that Plaintiff has access to photographs of the ramp which show its condition. ECF No. 33 at 16. However, photographs are unlikely to reveal facts related to the more physical aspects of the ramp such as its coefficient of friction, the precise level of incline, or other effects of the environment such as, for instance, the exposed tube allegedly at the point of contact

between the ramp and the street. ECF No. 45-3 at 7–9, 18. El Laundromat also notes that there were eyewitnesses present at the scene (ECF No. 33 at 16), but these lay witnesses would be barred from giving an opinion based on scientific, technical, or other specialized knowledge, the kind which would be necessary to discuss the physical aspects mentioned above. *See* Fed. R. Evid. 701(c). Such opinions would be reserved to experts qualified by knowledge, skill, experience, training, or education. Fed. R. Evid. 702. Even though Plaintiff has retained an expert and he has examined the site, the inspection was conducted on March 20, 2026, months after the ramp was removed. ECF No. 28 at 13; ECF No. 33 at 13. With meaningful inspection of the ramp now impossible, Plaintiff's expert is left to use only the photographs and measurements taken by a lay person to form his opinion. ECF No. 33 at 6 n.1. Together, these circumstances show that the development of Plaintiff's liability theory that El Laundromat failed to properly maintain the ramp or had a ramp not in compliance with construction codes is markedly hampered. ECF No. 1 at 7. In light of the "prophylactic, punitive, and remedial rationales underlying the spoliation doctrine," an adverse inference instruction is the appropriate remedy. *Mercado Córdova v. Walmart Puerto Rico, Inc.*, 2019 WL 3226893, at *4 (D.P.R. July 16, 2019) (quoting *Sharp v. Hylas Yachts, LLC*, 872 F.3d 31, 42 (1st Cir. 2017)).

The sanction, however, must be tailored carefully. The Federal Rules of Evidence preclude evidence of subsequent remedial measures for the purpose of showing fault. Fed. R. Evid. 407. Accordingly, Plaintiffs will not be permitted to bring to the attention of the jury evidence regarding the remedial measure—what was built to replace the ramp.[1] The jury may instead hear simply that the original ramp was not preserved. It will then be instructed that it

[1] All the attorneys of record are ordered to instruct their witnesses not to mention at trial the fact that a staircase and a new ramp have replaced the original ramp. Failure to comply with this directive will result in the imposition of severe sanctions.

may, but is not required to, infer that an examination of the ramp would have revealed facts unfavorable to El Laundromat.

## IV. Conclusion

For the foregoing reasons, Plaintiff's Motion for Sanctions due to Defendant's Spoliation of Evidence (ECF No. 26) is GRANTED IN PART and DENIED IN PART. The jury will receive a permissive adverse inference instruction related to the conditions of the access ramp as it existed on February 13, 2025.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 20th day of October 2026.

s/Marcos E. López
U.S. Magistrate Judge